No. 52.—C. and G. H. KELSEY & HALSTEAD and others, plaintiffs in error, *vs.* L. M. WYLEY, PARISH & Co. defendants in error.

[1.] Where a *fi. fa.* had issued in pursuance of the judgment of a Court of general jurisdiction : *Held,* that such judgment could not be *collaterally* attacked by attacking the *fi. fa. ;* but in order to get the *fi. fa.* out of the way of junior creditors, the attack must be *directly* made upon *the judgment,* by an issue tendered for that purpose, when the object is to impeach such judgment on the ground of fraud.

[2.] In regard to the Courts of *general* jurisdiction, the rule is, that nothing shall be intended to be out of their jurisdiction, but that which *specially* appears to be so ; and when such a Court has rendered a judgment in relation to any *subject matter* within its jurisdiction, the presumption is, that it had before it sufficient evidence to authorize it to award such judgment, and will be conclusive, as to the subject matter which it purports to decide, until reversed or impeached for fraud.

Motion, in Houston Superior Court. Decided by Judge STARK, April Term, 1851.

At the April Term, 1839, of Houston Superior Court, L. M. Wiley, Parish & Co. obtained judgment against T. & S. Williams, for the sum of $1793 96 cts. principal. Execution issued therefor, on the 18th day of May, 1839. The correct amount was inserted in the face of the execution, but on the back of it was for $753 96; the same entry was made on the execution docket. The only entry which appeared upon the execution, was a receipt in the handwriting of the late Judge *Tracy*, for $186 46 cts. but not signed by him, dated January 25th, 1850.

At the October Term, 1846, and on the 28th day of the month, an order was obtained, which recited, that it appeared to the Court, by the statement of the plaintiff's counsel and on inspection of the record, that the original *fi. fa.* had been issued by the Clerk, through mistake, for $753 96 cts. instead of $1753 96 cts. and ordering that the said *fi. fa.* so erroneously issued, be cancelled and annulled, and a new one for the correct amount be issued; and also directing the late Sheriff, George M. Duncan, to enter upon the new *fi. fa.* any levy or payment which may have been made upon the old one; and accordingly, upon said *fi. fa.* George M. Duncan made several entries, the last of which was made sometime about the 1st of January, 1850.

At the October Term, 1846, of said Court, a controversy arose as to the distribution of certain money arising from the sale of T. & S. Williams' property, between the plaintiffs in this *fi. fa.* and other judgment creditors of T. & S. Williams, when an issue of payment was made and tendered upon the *fi. fa.* of Wiley, Parish & Co. at the instance of C. & G. H. Kelsey & Halstead, which was at the April Term, 1847, withdrawn, and at said term, on motion of counsel, the *fi. fa.* of Wiley, Parish & Co. was set aside, on the ground that it was dormant, and the money then in the hands of the Sheriff, ordered to be paid to the *fi. fa.* of C. & G. H. Kelsey & Halstead. To which decis-

ion exception was taken, and the same was reversed by the Supreme Court, and subsequently money was paid upon said *fi. fa.* by order of the Superior Court, had at October Term, 1848.

At the April Term, 1850, of Houston Superior Court, a rule was moved against the Sheriff, to pay over the money in his hands to the *fi. fa.* of Wiley, Parish & Co. when counsel for C. & G. H. Kelsey & Halstead, moved to set aside said *fi. fa.* upon the following grounds :

1st. Because said *fi. fa.* bears date the 28th October, 1846, more than seven years after the signing of the judgment from which it issued; that it is attested by *Angus M. D. King*, as Judge, who was not at that time Judge, and signed by Lewis J. Jordan, as Clerk, who was not at that time Clerk.

2d. Because said *fi. fa.* is not an *alias fi. fa.* and contains entries prior to its date; the original *fi. fa.* having been by order of Court set aside, cancelled and annulled by order of this Court.

3d. Because the judgment from which said *fi. fa.* purports to have issued, was dormant—said *fi. fa.* not having issued within seven years from the time of signing said judgment.

4th. Because the judgment from which said *fi. fa.* was issued is and was dormant before the said *fi. fa.* was issued— the original *fi. fa.* issued therefrom not having any entry made thereon by the proper officer, for more than seven years from the time it was issued ; and farther, because the original *fi. fa.* was not erroneously issued, but was correctly issued, and that the said original was dormant, and the said established *fi. fa.* was erroneously established, and contained entries which were not on the original *fi. fa.* and said entries were erroneously placed on the said established *fi. fa.*

Which motion the Court sustained, and ordered the *fi. fa.* of Wiley, Parish & Co. to be set aside as absolutely null and void, and the money in the hands of Sheriff to be paid to the *fi. fa.* in favor of C. & G. H. Kelsey & Halstead, and other judgment creditors, according to priority.

To this decision exception was taken, and the same was reversed by the Supreme Court, August Term, 1850, at Decatur.

At April Term, 1851, of Houston Superior Court, counsel for Wiley, Parish & Co. moved a *rule ni si.* against the Sheriff, to pay over the money in his hands to the *fi. fa.* in their favor, when counsel for C. & G. H. Kelsey & Halstead; Stoddard, Miller & Co.; Hamilton, Houston & Co.; Wright, Murphree and John Martin, judgment creditors of T. & S. Williams, made out and tendered an issue upon the said rule, and moved the Court to set aside the *fi. fa.* and the order and judgment of the Court passed at the October Term, 1846, authorizing said *fi. fa.* to be issued and cancelled, and annulled the original *fi. fa.* which was issued from the judgment between the said parties, at the April Term, 1839, upon the grounds,

1st. Because said order and judgment was fraudulently obtained; the said G. H. Kelsey & Halstead, and other judgment creditors of T. H. Williams, were not parties to said order and judgment, and the Court was fraudulently deceived and induced to pass said order and judgment by false representations by the parties thereto; that the original *fi. fa.* which was issued from the judgment between the parties in 1839, was issued by mistake, for $753 96 cts, instead of $1753 96 cts. principal, called for by said judgment, and also said original *fi. fa.* contained entries by the proper officer, whereby it was saved from the operation of the Dormant Judgment Act; and that the same, together with the judgment from which it issued, was not dormant; when, in fact, said original *fi. fa.* was correctly issued for the sum of $1753 96 cts. and the said original *fi. fa.* did not contain entries by the proper officer, as required by the Dormant Judgment Act, and the same together with the judgment from which it issued, was dormant at that time. By means of which fraudulent and false representations and pretences, said Court was deceived and induced to pass said judgment, prejudicial to the rights of said C. & G. H. Kelsey & Halstead and others.

2d. Because the parties plaintiff and defendant to the judgment passed in 1846, in fraud of the rights of Kelsey & Halstead and others, colluded together for the defendants to consent

that said order should be passed by the Court, knowing that said original *fi. fa.* was correctly issued, and did not contain entries by the proper officer, but was dormant, and that said junior creditors were entitled to a legal preference.

3d. Because the Court had no jurisdiction or authority to pass said order and judgment, requiring and authorizing the late Sheriff, George W. Duncan, who was there and then out of office, to enter upon said *fi. fa.* so to be issued, any levy or payments which may have been made or received upon said *fi. fa.* so fraudulently and falsely represented as having been erroneously issued ; and that the said Duncan did falsely and fraudulently enter upon said *fi. fa.* levies and payments which were not upon the said original *fi. fa.*

4th. Because the original judgment between the parties, obtained in 1839, was dormant under the Act in such cases made and provided, at the time said order of 1846 was passed, and therefore, said order was improperly granted, and in fraud of the rights of said junior judgment creditors, who were not, and could not be heard upon its passage on the trial of the issue, which, by agreement of counsel, was submitted to the Court. Counsel for C. & G. H. Kelsey & Halstead and others, offered to introduce evidence in support of the several grounds taken in their motion, which was objected to by counsel for Wiley, Parish & Co. The Court sustained the objection and rejected the evidence, upon the ground that the question made had been adjudicated by the Supreme Court at Decatur, August Term, 1850.

Whereupon counsel for Kelseys & Halstead and others, excepted.

KILLEN, for plaintiff in error.

POWERS and WHITTLE, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The main question made in this case is, whether the Court below erred in directing that the points made at the last term of that Court, for its decision and judgment were the same which had been made before it at a previous term, and brought before this Court on a writ of error, in the case of *Wiley, Parish & Co. vs. Kelseys & Halstead et al.* 9 *Geo. R.* 117. The Court below was of the opinion, that the questions made at the last term of that Court, were evidentially the same as those adjudicated by this Court between the same parties, in the case above referred to, and so ruled—holding that that Court, to use its own language, was "*in vinculis*" with regard to the questions then made before it by the plaintiffs in error. To determine this question, we must examine *the facts*, as the same appeared in the record before us at Decatur, August Term, 1850, and as the same appear in the record *now before us.* The facts of the case, as the same appeared in the record before us on the former occasion were, that at the October Term of Houston Superior Court, in the year 1846, a judgment was rendered by that Court, in which it was " ordered and adjudged by the Court, upon the evidence of the plaintiff's counsel and an *inspection of the record,* that the Clerk had issued an execution upon a judgment rendered in favor of *L. M. Wiley, Parish & Co. vs. T. & S Williams,* through mistake, for the sum of $753 95, instead of the sum of $1753 95 : and it is further ordered and adjudged by the Court, that the execution so erroneously issued be, and the same is hereby *cancelled and annulled,* and that the Clerk forthwith issue a *fi. fa.* for the correct amount of the judgment, *nunc pro tunc;* and also, that the late Sheriff, George M. Duncan, do enter upon said *fi. fa.* so to be issued, any levy or payment which *may have been made or received upon the execution erroneously issued, as aforesaid.*" In pursuance of this judgment of the Court, it appeared that the new *fi. fa.* issued, and that George M. Duncan, the then late Sheriff, made several entries thereon, which had previously been made on the *fi. fa.* erroneously issued, so as to make the entries on the new *fi. fa.* correspond with those made on the *fi. fa.* which had been issued through mistake for the wrong amount, the last of which is dated January, 1840. It also appeared, that this new

*fi. fa.* had been proceeding to collect money out of the defendants for some years after it had issued, and had once been before this Court, when it was held not to have been a *dormant fi. fa.*

This judgment of the Court upon which this new *fi. fa.* was based, remained in full force, *unreversed* and *unimpeached,* when at April Term, 1850, of Houston Superior Court, a motion was made to set aside this *new fi. fa.* issued under the authority of that judgment, upon the following grounds:

"1st. Because said *fi. fa.* bears date the 28th day of October, 1846, more than seven years after the signing of the judgment from which it issued; that it is attested by *Angus M. D. King,* as Judge, who was not at that time Judge, and signed by J. Jordan, as Clerk, who was not at that time Clerk of this Court."

"2d. Because said *fi. fa.* is not an *alias fi. fa.* and contains entries prior to its date—the original *fi. fa.* having been by order of Court set aside, cancelled and annulled, by order of this Court."

"3d. Because the judgment from which said *fi. fa.* purports to have issued, was dormant, said *fi. fa.* not having issued within seven years from the time of signing said judgment."

"4th. Because the judgment from which said *fi. fa.* was issued, is, and was dormant before the said *fi. fa.* was issued—the original *fi. fa.* issued therefrom, not having any entry made thereon by the proper officer for more than seven years from the time it was issued."

"5th. Because the said original *fi. fa.* was not *erroneously* issued, but was *correctly* issued, and that the said original was dormant, and the said established *fi. fa.* was *erroneously* established, and contained entries which were not on the original *fi. fa.* and said entries were erroneously placed on the said established *fi. fa.*"  It also appeared, that the Court below sustained the motion to set aside the *new fi. fa.* issued under the authority of the judgment rendered in October, 1846, upon the grounds above stated, and declared the same to be absolutely *null and void.*  This judgment of the Court below having been

brought before this Court on a writ of error, it was reversed, on the ground that the *judgment* of the Supreme Court which authorized the new *fi. fa.* to issue, was *unreversed* and could not be attacked or set aside, in the *collatteral* manner proposed. Now, by an examination of the first, second, third, fourth and fifth grounds taken to set aside the *new fi. fa.* it will be discovered that not one word is said about attacking *the judgment* of 1846, for *fraud.* Every ground taken in support of the motion is an attack upon the *fi. fa.* issued under the authority of the judgment of October, 1846.

The motion on the trial of that case in the Court below, was not to set aside the *judgment* of the Court rendered in October, 1846, but the motion was to set aside *the fi. fa.* based upon, and supported by that judgment, which this Court ruled could not be done, so long as the judgment remained *unreversed* and *unimpeached,* for the reason stated. To have set aside the *fi. fa.* which was based upon and issued under the authority of the judgment of October, 1846, upon the grounds taken for that purpose, would have been in effect, to have declared that judgment *void* and a *nullity,* without any attempt ever having been made to *reverse* it for error, or to *impeach* it for fraud. So long as the judgment maintains its ground as a valid subsisting judgment, the process which was issued in pursuance of its authority will be maintained, notwithstanding such judgment may have been *erroneous.* 6 *Peters' R.* 8.

The attempt made on the former trial in the Court below (as the grounds taken clearly show) was, to attack the *fi. fa.* and in that *collateral* manner, to destroy the legal effect and operation of the judgment rendered by the Court, in 1846.

There was no attempt made then to attack *the judgment* of the Court rendered in 1846, for *fraud ;* there was no such ground taken or assumed in the record. The fifth ground assumes, that the *new fi. fa.* was *erroneously* established, but it is nowhere alleged that the *judgment* establishing it was *fraudulent.* We have now seen what were *the facts* contained in the record, which was before this Court at its August Term, 1850, as well as the *judgment* of this Court upon those facts. Now let us

Kelseys & Halstead *et al. vs.* Wiley, Parish & Co.

proceed to examine *the facts contained* in the record now before us, as transmitted from the Court below.

It appears from the record now before us, that the junior judgment creditors of T. & S. Williams, (to wit :) C. & G. H. Kelsey & Halstead *et al.* tendered an issue upon the Sheriff's return, by which they traversed and contested the right of L. M. Wiley, Parish & Co. to have the money in the hands of the Sheriff, raised from the sale of the defendant's property, applied to the payment of their *fi. fa.* and moved the Court to set said *fi. fa.* aside, and *the order and judgment of the Court, passed at the October Term,* 1846, *authorizing said fi. fa. to be issued, and cancelling and annulling the original fi. fa. which was issued from the judgment between said parties, at the April Term,* 1839, *of said Superior Court,* upon the following grounds :

" 1st. Because said order and judgment, passed in October, 1846, authorizing said *fi. fa.* to be issued, was *fraudulently* obtained, and that the Court was *fraudulently deceived,* and induced to pass said judgment by *false representations by the parties thereto ;* that the original execution which was issued from the judgment between the parties in 1839, was issued by mistake, for $753 96 cts. principal, called for by said judgment, and also, that the said original *fi. fa.* contained entries by the proper officer, whereby it was saved from the operation of the Dormant Judgment Act, and that the same, together with the judgment from which it issued, was not dormant, when in fact, said original was correctly issued for the sum of $1753 96 cts. principal, as called for by said judgment, and the said original *fi. fa.* did not contain entries by the proper officer, as required by the Dormant Judgment Act ; and the same, together with the judgment from which it issued, was dormant at that time. By means of which *fraudulent* and *false* representations and *pretences,* said Court was *deceived* and induced to pass said judgment prejudicial to the rights of said C. & G. H. Kelsey & Halstead, and the other junior creditors aforesaid."

" 2d. Because the parties plaintiff and defendant to said judgment, passed in 1846, in *fraud* of the rights of the said C. & G. H. Kelsey & Halstead, and the other junior judgment creditors,

*colluded together for the defendants to consent that said order should be passed by the Court,* knowing that said original *fi. fa.* was correctly issued, and did not contain entries by the proper officers, but was dormant, and that said junior creditors were entitled to a legal preference." There are other allegations and specifications taken in the motion to set aside the judgment, but being embraced in such a multitude of words, we have omitted them. We have, however, extracted enough from the record, to demonstrate that the motion made in the Court below, was not only to set aside the *fi. fa.* but to set aside *the judgment of the Court* upon which it is founded, on the ground of the several allegations and specifications of *fraud,* mentioned in the issue tendered for that purpose. In. *Williams vs. Martin,* (7 *Geo. R.* 381,) this Court held, that when a judgment, in an issue formed, comes in conflict with the rights or interests of third persons, not parties, or previous to such judgment, they may aver against it, may *impeach it for fraud,* and *prove the fraud.* The parties representing the junior judgment creditors, offered to prove the several allegations of fraud made in the issue tendered, in regard to the judgment obtained in October, 1846, but the Court rejected the evidence, on the ground that it was "*in vinculis;*" that the judgment of this Court rendered at Decatur, in August, 1850, *bound* that Court to reject the evidence of the alleged fraud, in obtaining the judgment of 1846. The Court below, in alluding to the judgment of this Court on the former occasion, touching this question held, "that the judgment of the Supreme Court overrules the *present mode of attack,* for if the judgment was then assailed *collaterally,* this is also a *collateral attack;* the modes of assault *then,* and *now,* are the same." We have been unable to discover the *binding force* of the judgment of this Court in *that case,* as applicable to the *state of facts in this case.* We have shown by *the record* of the case before us on the former occasion, that there was no motion made to set aside *the judgment* of October, 1846, or to impeach it in any way whatever for *fraud,* or other thing—that the attempt then made, was to set aside the *fi. fa.* issuing upon that judgment, and thus indirectly, or collaterally, destroy its legal effect and operation, which we then held, and

now hold, could not be done. But is the *mode of attack* on the judgment of 1846 now made, the same as made on the former trial? The junior creditors now make a *direct* attack upon that judgment, and move the Court to set it aside for *fraud*, and tender an issue in which the several allegations of fraud are specified.

If the junior creditors desire to get the *fi. fa.* issued in pursuance of the judgment of 1846, out of their way, they must first remove the foundation upon which it rests, which they are now attempting for the *first time* to do. On the former occasion, they made an attack on the *fi. fa.* but did not attack *the judgment*. On the former trial, the junior creditors attempted to set aside the *fi. fa.* issued in pursuance of the judgment of the Court, in October, 1846, on motion, and in that indirect or collateral manner, sought to attack and destroy the legal force and effect of *that* judgment; for, if that judgment was good for anything, it was good and effectual to maintain the validity of the *fi. fa.* which had been issued in pursuance of it. If it could not do that, then, for all legal purposes, it was a *nullity*, and to have set aside *the fi. fa. on motion*, would have been in effect, so to have declared, without any *direct* proceeding whatever, to impeach or set aside such judgment.

The facts as contained in the record on the former trial, most clearly show, in our judgment, that then there was an attempt on the part of the junior creditors to set aside the *fi. fa.* issued in pursuance of the judgment of 1846, and in that *indirect* and *collateral* manner, destroy the legal force and effect of that judgment; whereas, *the facts*, as contained in the record *now before us*, conclusively show that the junior creditors, instead of attempting to set aside the *fi. fa. alone*, made a motion to set aside the *judgment* of 1846 for *fraud*, and make a *direct* attack upon it, by tendering an issue for that purpose. On the former trial, the junior creditors attacked the judgment of 1846 *indirectly* and *collaterally*, by attacking the *fi. fa.* which issued in pursuance of it. On the last trial, they attacked the judgment of 1846, *directly*, by alleging it was *fraudulently* obtained, and offered to prove it; and *that* constitutes *the difference* between

the two cases. In the one case we held, it was not competent for the junior creditors to attack the judgment of 1846 *collaterally*, by attacking *the fi. fa.* which issued in pursuance of it. In the other, we hold, that it is competent for the junior creditors to attack *the judgment* of 1846 *directly* for fraud in obtaining it, as alleged in the issue tendered, and to prove the fraud, if they can do so, on the trial of the issue.

[2.] The Court below appears to have been impressed with the idea, that that Court in 1846 had *no jurisdiction* to adjudicate the question in regard to the entries directed to be made by the then late Sheriff, George M. Duncan, on the new *fi. fa.* directed to be issued by the judgment rendered in 1846. The Superior Court is a Court of *general* jurisdiction, and the rule is, as stated by this Court in *Grier vs. McLendon,* (7 *Geo. R.* 364,) that nothing shall be intended to be out of the jurisdiction of a Superior Court of *general* jurisdiction, but that which *specially* appears to be so. Had not the Superior Court in 1846, jurisdiction of the *subject matter* of the judgment? Most clearly so, in our judgment. What is the fair and reasonable interpretation to be given to that judgment, according to the rule above stated, in respect to the entries directed to be made on the new *fi. fa.* ? The Court by its judgment, ordered a new *fi. fa.* to issue in the place of an old one which had been issued for the wrong amount, *nunc pro tunc,* and also directed, "that the late Sheriff, George M. Duncan, do enter upon said *fi. fa.* so to be issued, any levy or payment which may have been made or received upon the execution, erroneously issued as aforesaid." Now, we are bound to presume that the Court in 1846, did not act in reference to the questions then before it, *without evidence ;* but on the contrary, we are bound to presume in favor of the judgment, that there was evidence before the Court that there were entries made on the old *fi. fa.* by George M. Duncan, the then late Sheriff; and for the purpose of having the same entries made on the new *fi. fa.* which were made on the old one, the testimony of George M. Duncan was resorted to, for the purpose of ascertaining the true state of the facts, inasmuch as the law requires Sheriffs to keep an execution docket. We are bound to

Kelseys & Halstead *et al. vs.* Wiley, Parish & Co.

presume, in support of the judgment, that the Court was satisfied, from the evidence before it, that entries had been made on the old *fi. fa.* by the then late Sheriff, George M. Duncan, because the Court orders the same entries to be made on the new *fi. fa.* not by George M. Duncan as Sheriff *at that time,* but for him to make just such entries on the new *fi. fa.* as he had made on the old one, while he was Sheriff, *nunc pro tunc ;* the Court first being satisfied from the evidence before it, that the entries ordered to be made by Duncan, were the proper entries, ascertained by reference to his execution docket, or to his entries on the original *fi. fa.* That we *cannot presume* that the Superior Court in 1846, awarded a judgment in reference to the entries to be made on the new *fi. fa.* without *satisfactory evidence* before it, we think is very clear. It having been established, then, to the satisfaction of the Court in 1846, (as we are bound to presume,) that there had been levies and other entries made on the original *fi. fa.* previous to that time, by George M. Duncan, while acting as Sheriff, the Court orders that the same entries shall be made by him on the new *fi. fa.* then ordered to be issued, as had been made by him while Sheriff, on the old *fi. fa. nunc pro tunc.* The entries on the new *fi. fa.* derive all their legal force and effect from the *judgment of the Court,* ordering the new *fi. fa.* to be issued—not from the fact that George M. Duncan, the late Sheriff, made the entries thereon in 1846 ; for he was only the *instrument,* acting under the authority of the Court. If the Court had selected any other individual to have made the entries on the new *fi. fa.* which had been proved to have been made on the old one by George M. Duncan, as Sheriff, while acting in that capacity, the entries would have been of equal validity. The fair and *reasonable* presumption in favor of the action of the Court in 1846 then, is, that George M. Duncan, having been Sheriff at the time the entries were made on the old *fi. fa.* he was called as a witness to prove what those entries were, either from his execution docket, or from the old *fi. fa.* as it then appeared in the Court, or from his best recollection ; and the Court being satisfied with his evidence in regard to that point, ordered him to make the same entries on the new *fi.*

*fa.* as had been made by him on the old one, *nunc pro tunc.* The Superior Court, in 1846, not only had jurisdiction of the question then before it, but we are bound to presume, and do presume, that it exercised its jurisdiction in awarding the judgment in relation to the new *fi. fa.* and the *entries thereon,* upon *sufficient evidence* to have authorized that judgment; and until it shall be *reversed,* or *impeached for fraud,* it is conclusive as to the *subject matter* which it purports to decide.

Let the judgment of the Court below be reversed.