# Richmond.

## LAWSON v. MOORMAN.

### March 14th, 1889.

1. JUDGMENTS—*Reversal—Collateral attack.*—It is settled doctrine that where a court hath jurisdiction over the subject-matter and parties, no error in its exercise can render the judgment void; that the judgment can be reversed only on bill of review appeal, and can be assailed only by direct suit, and not collaterally.
2. IDEM—*Infants—Non-residence—Publication.*—Infants named as defendants to bill for sale of ancestors' land to pay debts, against whom order of publication is made·upon affidavit of their non-residence, must show falsity of affidavit either then or after they come of full age, in direct proceedings to avoid the decree intered in the suit, and cannot attack it collaterally.
3. IDEM—*Purchaser—Fraud—Evidence.* — Where purchaser at such sale re-sells at greater price to substituted purchaser, the fact that the latter required a bond of indemnity is not sufficient evidence of collusion to defraud the heirs by procuring sale at inadequate price.

Appeal from decree of corporation court of Danville, rendered January 14, 1888, in a suit wherein William J. Moorman and others, heirs-at law of J. C. Moorman, deceased, were complainants, and W. N. Shelton, administrator of R. W. Lawson, deceased, and said Lawson's heirs and others, were defendants. Its object was to set aside a sale made to said Lawson of complainant's ancestors' land, under a decree of the circuit court of Pittsylvania county in a creditors' suit instituted by Thomas O. Soyars to sell the real estate of said J. C. Moorman, deceased, to pay judgment liens. To the last mentioned suit the complainants in this suit were parties, and being non-resident infants, were proceeded against by order of publication. Decree being

in favor of the complainants, the said Lawson's administrator and others appealed.

*Guy & Gilliam*, and *Peatross & Peatross*, for appellant.

*Christian & Christian*, and *Berkeley & Harrison*, for appellees.

LACY, J., delivered the opinion of the court.

The suit was instituted on the 20th day of March, 1884, by the appellees, as the heirs-at-law of one James C. Moorman, deceased, being at that time aged, respectively, William J. Moorman, twenty-eight years of age; Samuel J. Moorman, twenty-six; and J. C. Moorman, twenty years and ten months—the object of this suit being to set aside a judicial sale of their deceased father's real estate made by the circuit court of Pittsylvania county to the appellants' intestate, R. W. Lawson, deceased, who had been substituted as such purchaser in the place of E. B. Keen, the actual purchaser of the land, who was the grandmother of the said appellees, who were then infants, the said sale having been made in June, 1873. They allege that their father, James C. Moorman, the elder, died on the 13th day of October, 1863, leaving their mother a widow, with three infant children, and seized of the real estate in question, and possessed of large personal estate, which went into the hands of their grandfather, W. W. Keen, by whom it was wasted. That the debts of their father were nominal, only, so far as he was a principal debtor, and comparatively nominal so far as he was debtor as security for W. W. Keen. That one of his creditors of the latter class of debts, Thomas O. Soyars, obtained a judgment on his debt in August, 1866. That in July, 1872, the said Soyars instituted his suit in chancery in the county court of Pittsylvania to subject the real estate of the said J. C. Moorman, deceased, to the payment of his said judgment. This suit was brought against W. W. Keen, as administrator of J. C.

Moorman, deceased, Nanny Dougherty (his widow) and Charles E. Dougherty, her husband, and the said William A., Samuel J. and J. C. Moorman (his heirs). That the writ was served on W. W. Keen, and, upon affidavit of their non-residence, order of publication was had as to the other parties defendant. That at this time the defendants were out of the State, but for a short time only. That the bill was taken for confessed as to all the defendants, although the infants had at that time no guardian *ad litem*. One was, however, subsequently appointed in the suit and answered.

An account was ordered of the transactions of the administrator, and an account of debts, liens, and of the real estate. The report under this order showed W. W. Keen indebted to the estate of Moorman in the sum of $29,986.66, while the debts amounted to only $1,807.78; while the lot of ground in Danville was valued at $5,000, with a rental value of $500, and a lot at Ringgold was valued at $1,000, and the rental value fixed at $200. This resulted in a decree for the renting out of the real estate, and a further account of debts of Moorman. In May following (this being in April, 1873), W W. Keen made affidavit that he was the father of Mrs. Dougherty, who had been Mrs. J. C. Moorman; that the realty was not susceptible of division in kind; that the infants had no other estate, and that their interest would be subserved by a sale of the land; that their mother desired a sale; that she was their natural guardian, and they had no other guardian. Whereupon the decree for the renting out of the land was rescinded, and a sale of the land ordered, without assigning dower to the widow. In June following, a sale is reported of the Danville lot to W. W. Keen, agent for E. B. Keen, his wife, at the price of $4,000, and of the Ringgold lot at $600 to the same purchaser. This sale was confirmed by the court, and a commissioner appointed to collect the bonds. In November, 1873, following, R. W. Lawson, the appellants' intestate, became the purchaser of this real estate at the price of $7,000, he buying from Keen, and was

received by the court as the purchaser in the place of Keen, and a deed ordered to be made to him, when he had fully paid, by the same commissioner; all of which was subsequently done accordingly. They charge that the sale to Keen was fraudulent, and that Lawson took nothing by his subsequent purchase of Keen; that the sale was not to pay debts, but was made under chapter 124, § 2, Code 1873, authorizing the sale of the lands of infants and insane persons, etc., under certain conditions; that Lawson, by his purchase, made himself a party to the suit, and was bound by all the facts of record therein. And Lawson is called upon to answer certain interrogatories: (1) Was he not at the sale of the real estate? (2) Did he not hear that the sale was for so inadequate a price on account of a subterfuge that it was bought for the widow and children of Moorman? (3) Did he not demand some other assurance from Keen than an ordinary deed, to-wit: an indemnifying bond? (4) Did he not have and express a doubt as to this title on account of the probable interest of the children? And Lawson was called on to answer under oath, and it was prayed that the sale of the lands might be set aside, and proper accounts taken, etc.

Lawson demurred and answered. He claimed that the corporation court of Danville was without jurisdiction to correct the errors and irregularities of the circuit court of Pittsylvania county; that for these the plaintiffs must either appeal or apply by bill of review for their correction. He denies that the court decreeing the sale was without jurisdiction. He denies all fraud or collusion on the part of W. W. Keen, or of any other person. He says that the personal property of Moorman which came into the hands of Keen was chiefly slaves, which came into his hands during the pendency of the late war, and who were freed by its results; and tobacco, which was sold in Confederate currency, and the money likewise lost by the result of the war; a horse, which died; and household furniture and cows, exempt from sale for debts. He denies that the lots were very valuable.

That the lot in Danville had on it an old wooden house, which
he pulled down.  He denies that the debts of Moorman as·
principal debtor were merely nominal, and as surety compara-
tively nominal, and exhibits the records of the suit of his credi-
tors and the suit of *Peatross* v. *Peatross*, in which he was surety
for the receiver, by which, he claims, it is shown that his debts
as principal, and surety for a bankrupt principal, greatly
exceeded his entire estate.  That after the loss of the per-
sonal property belonging to Moorman, in the manner stated,
there was nothing out of which the debts could be paid, ex-
cept the proceeds of two lots bought by him.  He denies the
allegation that the defendants in the Soyars suit, other than
W. W. Keen, were non-residents.  That the suit of Soyars and
others was a creditors' suit for the settlement of the estate
of Moorman, and that the debts were over $20,000, after ex-
hausting all assets, and a sale was necessary; and that the
statute concerning a rental for five years to pay debts refers
only to living judgment debtors' estates, and does not apply to
the estates of dead debtors in a case like this.  He denies that
Keen bought by any profession of acting for the widow and
children, or for an inadequate price; that he was not present at
the sale; that he did get a bond of indemnity from W. W. Keen,
E. B. Keen, and W. W. Keen, Jr., their son, but that this was
taken, not with any idea that the complainants had any interest
in said lot, but to protect him against the claims of creditors;
and that there were creditors for large amounts against Moor-
man; and answered the interrogatories specifically as set forth
above, and claimed to be a *bona fide* purchaser for value of his
lot, without any notice of any irregularities in any of said pro-
ceedings, and that his rights as such purchaser give him a per-
fect title; and insists that, if the complainants had any claim
which they could have asserted at any time, they are now barred
by the statute of limitations; and that J. C. Moorman, Jr., one
of the appellees, had applied in the circuit court of Pittsylvania

county, in the suit of *Soyars* v. *Moorman,* to have the same revived, and that he should be required to elect in which of the said two suits he would proceed against him.

Depositions were taken in the cause and filed, and on the 6th day of January, 1888, a decree was rendered in the said court, by which, among other things, the court decreed: *First,* that the sale of the property to E. B. Keen, on June 17th, 1873, and the sale and conveyance thereof to R. W. Lawson, are void; *second,* that the plaintiffs do recover the entire lot of land on Main street, in the town of Danville, demanded by the bill, and all original improvements thereon on November 18th, 1873, rents and profits, etc.; *third,* that the plaintiffs do not recover the additional value of the new improvements, etc.; *fourth,* certain accounts as to these are ordered. From this decree the appeal is taken to this court.

The effect of this decree is to declare the decree of the circuit court of Pittsylvania county in the suit of *Soyars* v. *Moorman* void, and in its legal effect no decree; and it is therefore wholly disregarded, and all the proceedings under it are set aside. It has been said that by a void judgment no rights are divested; from it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. This inquiry as to the validity of a judgment, says Mr. Freeman, is to be prosecuted only by an investigation of jurisdictional facts, upon whose real or assumed existence every valid judgment must stand. In the case of *U. S.* v. *Arredondo,* 6 Pet. 709, the supreme court of the United States said: "The power to hear and determine a cause is jurisdiction. It is '*coram judice*' whenever a case is presented which brings this power into action. If the petitioner states such a case in his petition that on a demurrer the court would render judgment in

its favor, it is an undoubted case of jurisdiction." And in the case of *Sheldon* v. *Newton,* 3 Ohio St. 494, it was said: "Before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or the thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal to answer the charge therein contained. Jurisdiction over the subject-matter is conferred by the authority which organizes the court; that is, by law. Jurisdiction over the person is obtained by service of process, or in some other manner authorized by law, as by the voluntary appearance of a party during the progress of a cause; and a judgment pronounced by a tribunal having no authority to determine the matter in issue is necessarily and incurably void, and may be shown to be so in any collateral or other proceeding in which it is drawn in question. But the distinction between a total want of authority, on the one hand, and an erroneous exercise of the conceded authority, on the other, must be remembered; for, when a court of general jurisdiction acts within the scope of its general powers, its judgments will be presumed to be in accordance with its jurisdiction, and cannot be collaterally impeached. *Pulaski Co.* v. *Stuart,* 28 Gratt. 879. If the decree under examination was rendered by a court of record in the exercise of its ordinary jurisdiction over the subject-matter in litigation, the next fact to be determined is whether the court had jurisdiction over the person against whom the decree has been obtained. This fact must be determined by an inspection of the record, if the proceeding is in a court of limited jurisdiction, or one exercising a special jurisdiction; but nothing shall be intended to be out of the jurisdiction of a superior court but that which expressly appears to be so. *Gosset* v. *Howard,* 10 Q. B. 453; *Guilford* v. *Love,* 49 Tex. 715; *Goar* v. *Maranda,* 57 Ind. 339. Hence, though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed upon a collateral

attack that the court, if of general jurisdiction, has acted correctly and with due authority, and its judgment will be as valid as though every fact necessary to jurisdiction affirmatively appeared. *Cox* v. *Thomas,* 9 Gratt. 323; *Grignon's Lessee* v. *Astor,* 2 How. 319; *Potter* v. *Bank,* 28 N. Y. 656; *Kelsey* v. *Wyley,* 10 Ga. 371; *Reynolds* v. *Stansbury,* 20 Ohio, 344. Jurisdiction being obtained over the person and over the subject-matter, no error in its exercise can make the judgment void. The authority to decide being shown, it cannot be divested by being improperly or incorrectly employed.

The decree, in *Soyars* v. *Moorman,* of the circuit court of Pittsylvania county, held to be void by the corporation court of Danville, is claimed to be so on account of the fraudulent conduct of W. W. Keen, as alleged, of which Lawson is claimed to have had constructive notice. The facts disclosed in the record do not establish the charge of fraud against Keen. The charge that he sold the property for a large advance, and then pocketed this for his own benefit, was not made against him until he was dead; while it is shown that the plaintiffs were his fatherless grandchildren, living in his house, of tender years, without any property which they could hope to call their own out of their father's estate; and that estate is alleged to be hopelessly insolvent in a large sum, and a creditors' suit pending to subject his property to the payment of his debts. Their mother, who was living, was dying of consumption, and soon died; and the statement that he was acting for the best interest of the children in buying the property in his wife's name was not at that time contradicted, and does not appear to have been doubted. If the children were without property, and he a bankrupt, whatever he may have owed their father's estate, it is not unreasonable to suppose that he was without the means of saving the land for them, and a re-sale at an advance may have been his only available resource. But, however this may have been, there is not a particle of proof in the record to show any fraud on the part of Lawson. The land was only valued at $5,000,

and he gave $7,000 to a purchaser who had bought under a decree of a court of competent jurisdiction, and he appears to have been a *bona fide* purchaser, to whom no taint of fraud can in any wise be affixed. The single unusual circumstance of an indemnity bond is explained in a way to clearly exhibit Lawson's motive in procuring it by the statement that there were persons claiming to have large demands against Moorman's estate, whose debts, if valid, exceeded the value of the property bought by Lawson, and who might contend that the advance price should be paid to them. The appellees contend that the large claim established in the suit of *Peatross* v. *Peatross* against Keen has never been established as a valid claim against the heirs of Moorman. But, however that may be, and this court expresses no opinion on that point, it cannot affect the purchaser, Lawson. He, having purchased and duly paid his purchase-money in a court of general and competent jurisdiction, is a *bona fide* purchaser for value, without notice.

It is further insisted that this decree was void because the infant defendants were not made parties; but the bill names them as parties, and prays for process against them, and it appeared by affidavit filed that they were not residents of this State, whereupon there was an order of publication against them. This is authorized by statute. But it is alleged that this affidavit was untrue; that they were not non-residents of this State, but lived within the State. If this be so, they were allowed an opportunity to correct the erroneous proceeding, either then or after they came of full age; but for some cause they did not regard this as desirable, and they cannot deny now the validity of the decree by this collateral attack upon it in another forum, because the record shows that they were not residents of this State, and were properly proceeded against by the order of publication. But it is not denied, in fact, that they were not residents of the State at that time, but it is claimed that they soon returned. It is clear that this was a creditors' suit, having for its object the settlement of Moorman's estate,

and the sale of his lands to satisfy his debts. Of such a suit it is undeniable that the circuit court had jurisdiction. The administrator lived in the county, the real estate was situated there, and by the record it appears that the court acquired jurisdiction of the parties in the mode prescribed by law; and when the affidavit was filed that the widow desired a sale, and that it was to the interest of the infants that a sale should have been had, the question as to the time when the land should be sold, if at all, was one to be determined by the court; and, if determined erroneously, such erroneous decision might have been corrected by appeal, but it did not render the decree void, even if it should be conceded to be erroneous, which does not appear to be clear, when the fact is borne in mind that the indebtedness of Moorman was such as to render a sale unavoidable before the proceedings in that suit had been brought to a close. In that view of the case, if these parties had brought the case up on appeal within the prescribed time, I do not perceive how they would have been benefited by a reversal of the decree upon that ground. We do not perceive any fraud in the case. It is clear that the circuit court is a court of general jurisdiction, and that in this case the subject-matter of the controversy was within its jurisdiction, and it had jurisdiction of the parties; and we are not prepared to say there was any error in its proceedings for which this court would reverse its decree, but, no appeal having been taken, its decision is final. And it is clear that the corporation court of Danville was without jurisdiction to reverse for error, if any there were, and the bill should have been dismissed in that court. And we will proceed to render such decree as the corporation court of Danville ought to have rendered, and render a decree here dismissing the bill.

DECREE REVERSED.