## DUNAGAN *v.* STADLER & COMPANY.

1. As against a creditor who was duly served with notice of an application for a homestead, filed and approved in 1885, it will, though the homestead proceeding does not so disclose, be presumed that a proper order to the surveyor to lay off and plat the homestead was granted; nor as to such creditor will a homestead so approved be treated as invalid because the plats of two lots composing the same "did not purport to be made by the county surveyor and were not sworn to, accompanied by an affidavit as the law requires."

2. In so far as the decisions of this court in *Falls* v. *Crawford*, 76 *Ga.* 35, and *Mabry* v. *Johnson*, 85 *Ga.* 340, conflict with what is above laid down, they are, upon review, overruled. SIMMONS, C. J., dissenting.

Argued April 17, Reargued May 31,—Decided August 7, 1897.

Levy and claim. Before Judge Kimsey. Hall superior court. January term, 1896.

An execution in favor of Mack Stadler & Co. against G. C. Carter, from a judgment of July 27, 1885, which had been kept alive by proper entries, was levied, June 3, 1895, upon two adjoining houses and lots in Belton, to which a claim was interposed by A. D. Dunagan, as next friend and agent of three named minor children of the defendant in execution. The court directed that the property be found subject, and claimant excepted. He further assigned as error the exclusion by the court of certain homestead papers introduced in evidence, both as showing a valid homestead and as color of title. The grounds on which the papers were objected to were, that

there was no order to the county surveyor to make the plats therein appearing, and that the plats did not purport to be made by the county surveyor, and were not sworn to by an accompanying affidavit, as the law required.

The bill of exceptions states that the homestead papers were produced in court by counsel for plaintiff in fi. fa., he stating that he produced them under notice from claimant. The papers so offered were, in substance, as follows: The petition of G. C. Carter, a resident of Hall county, to the ordinary thereof, showing that he was the head of a family consisting of his wife and six children, naming them, and that he desired to have laid off and set apart a homestead for the use of said family, out of two described town lots in Gillsville and a quarter-acre lot in Belton bounded by Griffin and Bates, and to have exempted the personal property embraced in the attached schedule; and praying for an order to the county surveyor, and all other orders necessary in the premises. There was a schedule of all the property belonging to G. C. Carter at the time of making the application; also, a schedule of all his creditors and their post-offices, including Mack Stadler & Co., of Cincinnati, Ohio. Following said schedule was an affidavit of G. C. Carter before the ordinary, that the statements in the petition were true, and that the schedules contained a minute and accurate description of all the real and personal property owned by the applicant, and that the list of creditors was complete and their post-offices correctly given. The application was endorsed, filed in office July 29, 1885, and an order was passed by the ordinary on that day setting the hearing of the application for August 20, 1885. This was followed by a statement by the ordinary, dated July 29, 1885, showing that notice was published and notice mailed to Mack Stadler & Co. and other named creditors. Then followed an order signed by the ordinary, dated August 20, 1885, reciting that no objections were urged by any of the creditors, and approving the schedule of personalty; also, two plats describing the lots mentioned in the application and giving a valuation to each, each bearing the statement, made without any affidavit, that "the above plat represents the shape of a lot of land . . sur-

veyed by an order from the court of ordinary as property of Granville C. Carter and family, August 6, 1885. P. Q. Camp, D. S." Each plat was endorsed, "Approved this 20th day of August, 1885," signed by the ordinary. The schedule of personal property including accounts aggregated $1,036.16. Said proceedings were endorsed as recorded in the book of homesteads of Hall county, Aug. 22, 1885. No order to the county surveyor appeared, requiring him to survey any plat of this property.

*Perry & Craig*, for plaintiff in error.

*J. W. H. Underwood* and *H. H. Dean*, contra.

LITTLE, J. The question which arises in this case involves the nature of the proceedings to have homesteads and exemptions set apart under the laws of this State, and also the force and effect to be given to the decisions of the ordinary in passing upon the questions involved in such proceedings. If the acts of the ordinary are merely those of a ministerial officer charged by law with simply making an entry upon the application when the requirements of the statute are complied with, then there is no discussion required to determine that no presumptions of law arise in favor of such action; and being a matter of stricti juris, the action had can be attacked collaterally anywhere at any time that it interferes with the enforcement of a claim against the property. The jurisdiction and powers of the ordinary in passing upon the applications for homestead being statutory, the nature and extent of such powers are determined by the statute.

The constitution of our State, article 9, section 1, paragraph 1, declares, in language which can not be made more emphatic, there *shall* be exempt from levy and sale, etc., a homestead of realty and personalty to the aggregate value of sixteen hundred dollars; and in same article, section 4, paragraph 1, imposes the duty on the General Assembly to provide for *setting apart* and valuation of the same as early as practicable. In conformity with such direction, the General Assembly has provided that the person seeking the benefit of such exemption shall apply by petition to the ordinary of the county in which he resides, making certain allegations of a jurisdictional

nature, and attach a schedule of the property sought to be exempted, and a list of all the creditors of the person out of whose property this homestead is sought to be taken, etc.   The statute goes further and provides that each of said creditors shall be notified of the pendency of such application, by publication and by direct communication of the fact.   It also prescribes that a day of *hearing* such application shall be fixed; that such creditors may appear and object thereto, and that the ordinary shall *pass* thereon; and provides for a record of such proceedings.   These provisions of the law are conclusive that the duties to be discharged by the ordinary are not simply ministerial, because a ministerial duty is one in respect to which nothing is left to the discretion of the officer. 4 Wall. 498; 19 Am. & Eng. Enc. L. 392.

The ordinary must, by the force of this statute, in entertaining applications for and in passing upon the questions raised and in finally acting on the application in granting or refusing the homestead, act in his judicial capacity, that is, must constitute a court.   It will be remembered that the constitutional provision declaring in whom judicial powers shall be invested in this State (art. 1, sec. 1, par. 1) enumerates the Supreme Court, the superior courts, courts of ordinary, etc., "and such other courts as have been or may be established by law"; while by same article, section 6, paragraph 1, "the powers of a court of ordinary and of probate shall be vested in an ordinary for each county," etc.; so that the ordinary, in whom is the jurisdiction to grant or refuse to grant applications for homesteads, is a constitutional officer, vested with judicial powers by that instrument.   It may, however, be objected that the power in homestead matters is not exercised by the ordinary as the court of ordinary.   This may be true, and yet there is good authority for adopting the other view.   Section 2830 of the Civil Code uses this language: "It shall be the duty of such debtor when he takes steps *in the court of ordinary* to have such exemption," etc.; and in section 2834, to punish a county surveyor who fails to make a plat and swear to the same, for a contempt of *court;* and by section 2838, either party dissatisfied with the *judgment* of the ordinary shall have

the right to *appeal* under same rules as apply in appeals from the *court of ordinary*. But however this may be — and we are inclined to think that the powers conferred by statute are given to the ordinary as a judicial officer and not to the court of ordinary properly as such,— the statute providing for setting apart and valuation of homesteads vests in the ordinary large judicial discretion as well as large judicial powers. There is no force, either, in the objection that the statute in prescribing the method of making application for a homestead and the requirements for its grant does not constitute the ordinary a court, or the insistence that a strict observance of the provisions of the statute alone gives him jurisdiction to entertain the application. A court is composed of a judge or judges, and subordinate officers; courts of law usually have a jury to decide questions of fact. 4 Am. & Eng. Enc. L. 447. It is not necessary, however, that to be a constitutional court a jury should be provided to determine the facts. *Freeman* v. *The State*, 72 *Ga.* 812; *Skrine* v. *Jackson*, 73 *Ga.* 377. So much has been said in furtherance of the proposition that the statute which gives to the ordinaries of the several counties jurisdiction to hear and determine applications for homesteads constitutes this officer a court for that purpose; it would seem unnecessary to further elaborate the proposition. He passes upon the jurisdiction; he hears and passes upon the admissibility of evidence, decides questions of fact under the evidence, and enters judgments which are final and conclusive unless appealed from and set aside. "The distinction between courts of original and general jurisdiction over any particular subject, and courts of special and limited jurisdiction, is this: The former are competent under their constitution to decide upon their own jurisdiction and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence upon which it is rendered. Their records import absolute verity, and can not be impugned by averment or proof to the contrary. There can be no judicial inspection behind the judgment, save by appellate power. The latter are so constituted that their judgments may be looked through for the facts and evidence necessary to sustain them; their decisions do not furnish evidence

of themselves to show jurisdiction and its lawful exercise; every requisite for either must appear upon the face of their proceedings, or they are nullities." 4 Am. & Eng. Enc. L. 453. Now, in the matter of homesteads, their allowance or disallowance, the ordinary has original and exclusive jurisdiction; an appeal from his decision is allowed. In the light of the clear distinction drawn above, which is supported in 2 Howard, 319–341, we are bound as a matter of law to give to his judgments in these matters not only the force and effect to which the judgments of other courts of original jurisdiction are entitled, but the same incidents and presumptions. For the purposes of this case, these are, that it can not be set aside in a collateral proceeding, and though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed upon a collateral attack that the court acted correctly, with due authority, and its judgment will be as valid as though every fact necessary to jurisdiction affirmatively appeared. 1 Freeman on Judgments, 124, and note 2. To set aside a judgment rendered by a court having jurisdiction to adjudicate a question, a direct proceeding must be had. *Kelsey* v. *Wiley, Parish & Co.*, 10 *Ga.* 371; *Jessup* v. *Gragg*, 12 *Ga.* 263; *Wiley, Parish & Co.* v. *Kelsey*, 13 *Ga.* 229; *Foster* v. *Reid*, 57 *Ga.* 609; *Dunn* v. *Brogden*, 68 *Ga.* 63. The order being passed by a court of competent jurisdiction, and acting within the sphere of its authority, its proceedings can not be attacked and set aside in an indirect manner. *Stell* v. *Glass*, 1 *Kelly*, 486.

In the case now under consideration a regular application, showing jurisdiction and the applicant to be entitled to a homestead under the law, was filed in 1885, the necessary schedules were attached, and the creditors all notified. An order was duly passed by the ordinary assigning the hearing for 20th August, 1895. On the day assigned the ordinary passed an order that no objections were urged by any of the creditors, and approved the schedule of personalty and two plats describing the lots mentioned in the application, each bearing the statement, made without affidavit, that they represented the lots surveyed by an order of the court of ordinary as the

property of the applicant, and signed P. Q. Camp, D. S. These proceedings were duly recorded in August, 1885. In 1895 an execution, which was in existence when the application was made, was levied on these lots, and a claim interposed for the minors. The objections to the homestead papers were, that there was no order to the county surveyor to make the plats, that they were not made by the county surveyor, and were not sworn to. The plaintiff in fi. fa. was shown to have been legally notified in 1885 of the application and the day of passing on the same. He interposed no objection then; he ought not to be heard collaterally now. He has had his day in court. The fact that the ordinary granted the homestead presumes that it was regular. When it is shown that the plats were made by another than the county surveyor, the law will presume there was no county surveyor. Civil Code, § 2868. When it is shown that no affidavit of the surveyor was attached, the law will presume nevertheless that the proper affidavit was made. In other words, this application for homestead having been made to a court having original and exclusive jurisdiction of the person and the subject-matter, the papers showing the service legally required, the judgment of the ordinary setting aside the homestead will be taken and accepted as regular and valid, and the plaintiff in execution will not be heard to attack it for any irregularity. It is not a void judgment, if it be voidable. If for any reason it appears that it should be set aside, the court which rendered it is still open for an attack on the judgment by the creditor; but until so attacked and set aside, it must stand as valid. The law favors the granting of homesteads and the enforcement of the provisions which have been enacted to protect wives and minor children for whose benefit the provision has been made. The cases of *Falls* v. *Crawford*, 76 *Ga.* 35, and *Mabry* v. *Johnson*, 85 *Ga.* 340, which are in conflict with what is here held, are overruled. In the case of *Harris* v. *Colquitt & Baggs*, 44 *Ga.* 663, this court held that the judgment of the ordinary in granting the homestead concludes on all the facts necessary to appear before the court can give a judgment; and in *Bartlett* v. *Russell*, 41 *Ga.* 196, it was ruled that if the creditor failed to

appear and object on the ground that the schedule was insufficient, the creditor will not be permitted to attack the judgment of the ordinary, setting it apart, collaterally in a claim case on the ground that the schedule was not sufficiently descriptive. We prefer to adhere to the spirit of the rulings made in these earlier decisions, as illustrative of the correct principles which we think control the case.

The judge below directed a verdict for the plaintiff in fi. fa. This we think was an error.

*The judgment is reversed. All the Justices concurring, except*

SIMMONS, C. J., dissenting. The ordinary, when acting to set apart a homestead, if a court at all, is one not of general but of special jurisdiction. Whoever relies upon a judgment of such a court must establish every fact necessary to confer jurisdiction upon it. The proceedings of such a court must be shown to be within the powers granted it by law, or such proceedings will be disregarded. If special authority or power is given, and the manner of its exercise is pointed out, the power or authority must be pursued in the manner dictated. Where, therefore, the law requires the ordinary to issue an order to the surveyor to "lay off the homestead . . and make a plat of the same," and requires the surveyor to "make an affidavit that the same is correctly platted and laid off, . . and return the same to the ordinary before the day appointed . . for passing upon said application," and then requires the ordinary, if there be no objection, to approve the plat thus made under oath by the surveyor, and some person not authorized by law makes a plat and signs it "Camp, D. S.," and does not even make the affidavit required by law, and the ordinary approves such plat, his action is void and no legal homestead is thereby set apart. The filing of the affidavit by the surveyor that the homestead is correctly platted is the manner pointed out for the exercise of jurisdiction by the ordinary. Not having complied with the law he had no jurisdiction. The fact that the creditor was notified of the application makes no difference, he not appearing and objecting. The cases overruled by a majority of the court are, for these reasons, sound and should stand.