4798. BROOKS v. TINSLEY et al.

1. A judgment of the ordinary setting apart a homestead exemption allowed under the constitution of 1877 can not in a collateral proceeding be attacked for mere irregularities in the application for the homestead, which are amendable and are cured by the judgment.
2. The wife and children for whose benefit a homestead was set apart, and who have enjoyed the benefit of the homestead for years, can not, after the death of the husband and father on whose application it was set apart, be heard to attack its validity because of merely formal defects in the application or in the judgment setting apart the homestead.
3. Where real estate has been set apart as a homestead exemption, it can not legally be sold except by an order of the superior court.
4: Where one buys real estate in ignorance of the fact that it has been set apart as a homestead exemption, and gives his note for the purchase-money to the vendors, who are the beneficiaries of the homestead, and afterwards discovers that the real estate is a homestead, and no order of court has been obtained from the superior court for the sale thereof, he can set up these facts as a defense, when sued on the note by the payees. Especially is this so when the homestead property is still in the possession of the vendors. No valid conveyance having been made, the note is without consideration.

DECIDED AUGUST 25, 1913.

Complaint; from city court of Newnan—Judge Post. February 21, 1913.

*A. H. Freeman,* for plaintiff in error.

*H. A. Allen, W. C. Wright,* contra.

HILL, C. J. Tinsley and others brought suit in the city court of Newnan against Brooks as the maker of a promissory note alleged

to have been given to the plaintiffs as the purchase-price of described real estate. Brooks filed a plea alleging that the consideration of the note had entirely failed, because the land for which the note was given had been set apart to the father of the payees of the note as a homestead under the constitution of 1877, and no order of the superior court had been granted authorizing the sale of the property, and the plaintiffs therefore could not make to him a valid title to this real estate. The case was tried by the judge without the intervention of a jury, and at the conclusion of the evidence he rendered a judgment in favor of the plaintiffs; to which the defendant excepted.

On the trial of the case the defendant offered in evidence a certified copy of proceedings of the court of ordinary, showing that the land for which the note was given had been set apart as a homestead as stated. This exemplification was objected to on the following grounds: That the application for homestead was addressed to the court of ordinary, and not to the ordinary, and the court of ordinary had no jurisdiction to entertain such an application, since, under the law, an application for homestead must be made to the ordinary, and the ordinary and the court of ordinary are different in law, and, as thus addressed, the petition did not give the ordinary any jurisdiction to set apart the homestead; that the ages of the beneficiaries were not set out in the petition for the homestead; that the applicant "prayed the court *not* to set up the homestead to him," the language as shown being that he "makes application to the court that by said court there may not be set up to said family a homestead out of petitioner's property;" that the petition made no reference to any schedule showing the names of the applicant's creditors; that the property out of which the homestead was desired was not sufficiently described in the application; that there was no evidence that the land had been surveyed; that a notice of the application for homestead was not published as required by law, in that it was published only one time; that the application was for a "pony" homestead, and the ordinary, therefore, had no authority to set apart the $1,600 homestead under the constitution; and for these reasons no valid homestead was set apart to the applicant as the head of the family. The court sustained these objections, or some of them, it not appearing from the record which ones.

We think the judge erred. These objections were all formal and related to mere irregularities, which were amendable. Presumably they were amended before the judgment of the ordinary was finally rendered. We do not think the judgment of the ordinary setting aside the homestead is subject to collateral attack on account of these irregularities. In the case of *Dunagan* v. *Stadler,* 101 *Ga.* 480 (29 S. E. 442), it was said: "This application for homestead having been made to a court having original and exclusive jurisdiction of the person and subject-matter, the papers showing the service legally required, the judgment of the ordinary setting aside the homestead will be taken and accepted as regular and valid, and the plaintiff in execution will not be heard to attack it for any irregularity. It is not a void judgment, if it be voidable." If the judgment setting apart the homestead should for any reason be subsequently attacked by creditors of the applicant, the attack should be made in the court in which it was granted. The law favors the granting of homesteads, and attacks on the homestead for mere amendable irregularities should not be allowed. Illustrating this point, it is said in the case of *Redding* v. *Lennon,* 112 *Ga.* 493 (37 S. E. 712), that under the decisions of the Supreme Court these exemption laws must be construed liberally in favor of the applicant. "It would be a great hardship upon the family of a claimant if they were to be turned out of house and home because the original schedule, through the ignorance or mistake of the person making it, fails to describe the land definitely and exactly." What is here said applies forcibly to all the objections urged to the admission of the exemplification, showing the setting apart of the homestead in the present case.

In the next place it was admitted that the husband and father and the beneficiaries of the homestead had been in possession of it, enjoying it and its exemptions for a period of nineteen years. Having originally, through the head of the family, invoked a judgment of the court of ordinary setting apart this homestead, the beneficiaries should be estopped from objecting to its validity on any merely technical grounds. It does not appear that any creditors of the applicant objected to the setting apart of the homestead, or that there were any creditors interested in the matter. The wife, who still is living, had notice of her husband's application for the homestead for her benefit and that of her minor children. She

should not now be heard, after nineteen years of possession of this homestead by herself and her family, to complain that the original proceedings setting it apart for her and her children were void. If her husband were in life, after having acquired the homestead for himself and family and after having enjoyed the benefit of the homestead which he had asked the ordinary to set apart, he certainly could not be heard to attack its validity; and if he would be estopped, it would seem that his wife, who was privy with him in the application, should likewise be estopped. In *Dunagan* v. *Stadler,* supra, it is said: "Now, in the matter of homesteads, their allowance or disallowance, the ordinary has original and exclusive jurisdiction; an appeal from his decision is allowed. . . We are bound as a matter of law to give to his judgment in these matters not only the force and effect to which the judgments of other courts of original jurisdiction are entitled, but the same incidents and presumptions. For the purpose of this case, these are, that it can not be set aside in a collateral proceeding, and though the existence of any jurisdictional fact may not be affirmed upon the record," as in the instant case the petition being addressed to the "court of ordinary," instead of to the ordinary, "it will be presumed upon a collateral attack that the court acted correctly, with due authority, and its judgment will be as valid as though every fact necessary to jurisdiction affirmatively appeared." This decision would seem to cover every one of the objections made to the homestead in the present case. It goes to the extent of holding that all formal or amendable defects were cured by the judgment of the ordinary in setting apart the homestead. Civil Code (1910), § 5960; *Reid* v. *Hearn,* 127 *Ga.* 117 (56 S. E. 129). But the Supreme Court has specifically held that some of the objections made to this homestead are entirely without merit. In *Roberts* v. *Cook,* 68 *Ga.* 324, it was held that failure to allege the ages of the children will not render the homestead void. In *Mc-Williams* v. *McWilliams,* 68 *Ga.* 459, it was held that "failure to allege out of whose property [the homestead] was to be carved was not such a fatal defect as would render the proceeding void." In *Bartlett* v. *Russell,* 41 *Ga.* 196, it was said: "The schedule filed by the applicant for homestead and exemption should describe the personal property with reasonable certainty. But if the creditor failed to appear and object, on the ground that the schedule was

insufficient, and it gives a general description of the property, . . the creditor will not be permitted to attack the judgment of the ordinary setting it apart, collaterally, in a claim case, on the ground that the schedule was not sufficiently descriptive."

The objection made, that the application was for a "pony" homestead under the code, and not for the constitutional homestead of $1,600, appears not to be well taken. The application very clearly shows that a constitutional homestead of $1,600 was desired, and this character of a homestead was set apart by the ordinary. The citation of the code section, relating to a "pony" homestead, in the application, seems to have been merely a clerical mistake. But this is immaterial, in that the application as a whole shows beyond a doubt that the constitutional homestead was desired, and this character of homestead was set apart to the applicant as the head of his family, and from that time until now it seems to have been possessed and enjoyed by its beneficiaries. We think, therefore, that the judge erred in excluding from evidence the certified copy of the homestead exemption.

The next question is: Could the widow of the applicant for homestead and his children make a valid sale of the property set aside as a homestead to them? It is admitted that no order of the superior court authorized the sale of the homestead property; and without such authority from the court no valid sale could have been made. *Hart* v. *Evans,* 80 *Ga.* 330 (5 S. E. 99) ; Constitution of Georgia, art. 9, sec. 3, par. 1, Civil Code (1910), § 6584. It follows that the note sued on was without consideration, and the homestead exemption in the property for which the note was given was properly set up as a defense to the payment of the note. See *McManus* v. *Cook,* 59 *Ga.* 485; *Sizemore* v. *Pinkston,* 51 *Ga.* 398. In our opinion the certified copy of the homestead exemption should not have been rejected for any of the reasons of the objectors; and after its admission with the other evidence in the case, a finding should have been made by the court in favor of the defendant. A decision of the other questions made in the bill of exceptions is unnecessary.          *Judgment-reversed.*